**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **DEBORAH M. DENNIS,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:16-CV-836-BH** |
| | § | |
| **OCWEN LOAN SERVICING LLC,** | § | |
| **Defendant.** | § | **Consent** |

## MEMORANDUM OPINION AND ORDER

By consent of the parties, this case was transferred for the conduct of all further proceedings

and entry of judgment by order of reassignment dated April 19, 2016 (doc. 9). Based on the relevant

filings, evidence, and applicable law, *Defendants' Motion for Summary Judgment*, filed August 16,

2017 (doc. 29), is **GRANTED**.

## I. BACKGROUND

This case involves the attempted foreclosure of real property located at 1150 Hemlock Drive,

Desoto, Texas 75115 (the Property). (doc. 1-1 at 44.)[1] On December 12, 2003, Deborah M. Dennis

(Plaintiff) individually executed a Note for a loan in the principal amount of $53,600.00 to the order

of Homecoming Financial Network, Inc. (Homecoming) as lender. (doc. 31-1 at 9-12.) The Note

was endorsed to Bank of New York Mellon Trust Company (BONY), who is the current owner and

holder of the Note. (*Id.* at 12.) Plaintiff and her husband, W. T. Dennis, Jr., contemporaneously

executed a Deed of Trust that granted a security interest in the Property to Homecoming to secure

repayment under the Note. (*Id.* at 14-29.) Under the terms of the Note and Deed of Trust, Plaintiff

would be in default if she failed to timely pay the full amount of each required monthly payment and

---

[1] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

also subject to acceleration of the loan and foreclosure proceedings on the Property. (*Id*. at 10, 26.) On December 18, 2015, Homecoming's nominee, the Mortgage Electronic Registration Systems, Inc. (MERS), executed a Corporate Assignment of Deed of Trust (Assignment) that assigned the Deed of Trust to BONY. (*Id*. at 15-16, 31-32.) BONY uses Ocwen Loan Servicing, LLC (Defendant) to service the mortgage on its behalf. (*Id*. at 36-41.)

Beginning August 1, 2011, Plaintiff failed to submit her required monthly payments and was held in default by BONY. (*See id*. at 36.)[2] On October 6, 2015, Defendant sent Plaintiff a Notice of Default as required under the Note and Deed of Trust. (*Id*. at 36-47.) This notice explained that Plaintiff was in default for failure to make required payments, and that the maturity date of the Note and Deed of Trust would be accelerated if the default was not timely cured. (*See id*.) On December 11, 2015, Plaintiff sent a letter to Defendant disputing the amount of the debt due to BONY under the mortgage documents. (*Id*. at 55.) On January 8, 2016, Defendant responded to Plaintiff's letter by validating the debt and including a copy of Defendant's payment reconciliation. (*Id*. at 64-67.) Three days later, Defendant sent a copy of the Note and the full payment history showing the deficiency under the mortgage documents to Plaintiff. (*Id*. at 69-76.)

On February 2, 2016, BONY's foreclosure vendor sent Plaintiff a Notice of Acceleration and Maturity explaining that she had failed to cure the default, and the maturity date under the loan documents had been accelerated as a result. (*Id*. at 80-82.) Also included was a Notice of Substitute Trustee Sale that was scheduled to occur on March 1, 2016. (*Id*. at 82-83.) On February 18, 2016, Plaintiff sent Defendant a letter proposing either a loan modification or a short sale of the property in lieu of foreclosure proceedings. (*Id*. at 85-86.) Defendant responded by sending Plaintiff a loan

---

[2] The Property was a part of the estate in Plaintiff's voluntary Chapter 11 bankruptcy case, which was terminated on March 2, 2015. *See In Re. Dennis*, No. 10-33891-hdh11 (Bankr. N.D. Tex. Mar. 2, 2015.)

modification application. (*Id*. at 88-111.) On February 29, 2016, Defendant sent Plaintiff correspondence informing her that she failed to submit a completed loan modification application by the 7th business day prior to the foreclosure sale, and as a result, her modification request was denied, and the foreclosure sale would continue as scheduled. (*Id*. at 116-119.)

On February 25, 2016, Plaintiff filed suit and an application for temporary restraining order in the 44th District Court of Dallas County, Texas. (doc. 1-1 at 43-58.) Later that same day, Plaintiff filed her first amended petition. The temporary restraining order was granted the following day, and the foreclosure sale was canceled. (*Id*. at 2-3.) Defendant subsequently removed the action to federal court, asserting federal question jurisdiction under 28 U.S.C. § 1331 on March 24, 2016. (doc. 1.) Plaintiff's first amended petition asserts claims under a breach of contract theory, the Fair Debt Collection Practices Act (FDCPA), the Texas Property Code, the Texas Business & Commerce Code, the Texas Finance Code, and the Dodd–Frank Wall Street Reform and Consumer Protection Act (Dodd-Frank Act). (doc. 1-1 at 43-58.) She seeks damages, exemplary damages, attorney's fees, court costs, injunctive relief, and a declaratory judgment. (*Id*. at 54, 57.)

Defendant now moves for summary judgment. (docs. 29-31.)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id*. The movant makes a showing that there is no genuine issue of material fact by informing the court

of the basis of its motion and by identifying the portions of the record that reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party can also meet its summary judgment burden by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325 (internal quotation omitted).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Id.* at 324. To carry this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-movant must show that the evidence is sufficient to support a resolution of the factual issue in her favor. *Anderson*, 477 U.S. at 249. The nonmovant's burden cannot be satisfied by conclusory allegations, unsubstantiated assertions, or a mere scintilla of evidence. *Douglass v. United Servs. Auto. Ass'n*, 65 F.3d 452, 459 (5th Cir. 1995), *revised on other grounds*, 79 F.3d 1415 (5th Cir. 1995) (en banc).

"The parties may satisfy their respective burdens by 'citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials.'" *Rooters v. State Farm Lloyds*, 428 F. App'x 441, 445 (5th Cir. 2011) (citing Fed. R. Civ. P. 56(c)(1)). While all of the evidence must be viewed in a light most favorable to the motion's opponent, *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions satisfy the non-movant's summary judgment burden, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). Summary judgment in favor of the movant is proper

if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to his case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.[3]

### III. CLAIMS UNDER TEXAS STATUTES

Defendant first seeks summary judgment on Plaintiff's claims for violations of Texas statutes because they are all based upon the "show-me-the-note" theory that "fail[s] under well-established Texas law." (doc. 30 at 12-13.) It also argues that her request for declaratory judgment should be denied because it is "derivative of her show-me-the-note theory." (*Id*. at 12.)

### A. <u>Texas Property Code and Texas Business & Commerce Code</u>

Plaintiff's first amended petition asserts a "Texas Property Code Violation" and a "Texas Business & Commerce Code Violation" without identifying the particular provisions that Defendant allegedly violated. (*See* doc. 1-1 at 51.) She argues that Defendant cannot foreclose on the Property because it is not the "Holder in Due Course" or "Holder of the Note" as it failed to "prove the legitimacy of the Note" and to "produce the Original Note with all allonges, transfers and assignments affixed thereto." (*Id*.)

Chapter 51 of the Texas Property Code governs the procedure for enforcing the "power of sale conferred by a deed of trust or other contract lien." Tex. Prop. Code § 51.002. Under the Code, both "a mortgagee and [a] mortgage servicer may administer a deed of trust foreclosure without production of the original note." *Crear v. JP Morgan Chase Bank, N.A.*, No. 10–10875, 2011 WL 1129574, at *1, n.1 (5th Cir. Mar. 28, 2011) (citing *id*. at §§ 51.0002, 51.0025). A "mortgagee" is

---

[3] Rule 56 imposes no obligation "to sift through the record in search of evidence to support a party's opposition to summary judgment." *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 164 (5th Cir. 2006) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).

"the grantee, beneficiary, owner, or holder of a security instrument"; "a book entry system"; or "if the security interest has been assigned of record, the last person to whom the security interest has been assigned of record." Tex. Prop. Code § 51.0001(4)(A)-(C). A "mortgage servicer" is "the last person to whom a mortgagor has been instructed by the current mortgagee to send payments for the debt secured by a security instrument" and may be the mortgagee itself. *Id*. at § 51.0001(3). The mortgagee need not produce the original note because its authority to foreclose is determined solely by its relationship to the deed of trust. *See Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 255 (5th Cir. 2013) (explaining that possession of the note is not a prerequisite to foreclosure since a "deed of trust gives the lender as well as the beneficiary [of the deed of trust] the right to invoke the power of sale, even though it would not be possible for both to hold the note") (internal quotations omitted).

"Texas courts have refused to conflate foreclosure with enforcement of a promissory note." *Reardean v. CitiMortgage, Inc*., No. A–11–CA–420–SS, 2011 WL 3268307, at *3 (W.D. Tex. July 25, 2011). Under Texas law, promissory notes and deeds of trust are distinct obligations that afford lenders distinct remedies upon default, "the note against the borrower and the lien against the real property." *Bierwirth v. BAC Home Loans Servicing, L.P.*, No. 03–11–00644–CV, 2012 WL 3793190, at *3 (Tex. App.–Austin Aug.30, 2012, no pet.). When the lender seeks a personal judgment against the borrower, it "must typically demonstrate that it is the holder[4] of the note by producing the original wet-ink instrument." *Millet v. JP Morgan Chase, N.A.*, No. SA–11–CV–1031–XR, 2012 WL 1029497, at *3 (W.D. Tex. Mar. 26, 2012). By contrast,

---

[4] The Texas Uniform Commercial Code (UCC) governs the procedure for establishing "holder" status. *See* Tex. Bus. & Com. Code §§ 3.201, 3.203, and 3.204 (providing the requirements for the negotiation, transfer, and endorsement of negotiable instruments).

"[f]oreclosure is an independent action against the collateral" that "enforces the deed of trust, not the underlying note." *Reardean*, 2011 WL 3268307, at *3. Advocates of the "show-me-the-note" theory "believe that only the holder of the original wet-ink signature note has the lawful power to initiate a non-judicial foreclosure." *Wells v. BAC Home Loan Servicing, L.P.*, No. W–10–CA–00350, 2011 WL 2163987, at * 2 (W.D. Tex. Apr. 26, 2011) (internal quotations omitted). The Fifth Circuit has "unequivocally rejected the 'show-me-the-note theory.'" *Van Duzer v. U.S. Bank Nat. Ass'n*, 582 F. App'x 279, 282 (5th Cir. 2014) (citing *Martins*, 722 F.3d at 255).

Here, Defendant has provided a copy of the Note endorsed to BONY and a copy of the Corporate Assignment of Deed of Trust executed by MERS that assigned the Deed of Trust to BONY. (doc. 31-1 at 9-12, 15-16, 31-32.)  It also provided a copy of its letter to Plaintiff dated October 6, 2015, identifying itself as BONY's loan servicer and noting the proper "payment remittance information." (*Id*. at 36-40.) This evidence shows that Defendant may properly foreclose under the Texas Property Code and Texas Business & Commerce Code, so it has met its summary judgment burden to show no genuine issue of material fact on these claims.

The burden now shifts to Plaintiff to show a genuine issue of fact as to her claims under the Texas Property Code and Texas Business & Commerce Code.  She responds that she "has not made an argument or claim pleading the 'show-me-the-note' argument" as the basis for relief. (doc. 34 at 3.) She does not, however, identify any other basis for her claims or show how her allegations that Defendant cannot foreclose because it failed to "produce the Original Note" do not implicate the "show-me-the-note" theory. (*Id*.) She also does not point to any evidence and only alleges that she "requested the history of the transfer and authorizing documents." (*Id*.)  Plaintiff has failed to meet her summary judgment burden.

B.     **Texas Finance Code**

Plaintiff's first amended petition also asserts a claim under §§ 392.301-404 of the Texas Finance Code, which is commonly identified as the Texas Debt Collection Practices Act (TDCPA). (doc. 1-1 at 51-52.) It contends that Defendant's attempted foreclosure was "fraudulent, deceptive, and/or [involved] misleading representations" under the TDCPA because Defendant "provided no evidence that they are in fact Holder in Due Course and Holder of the Note." (*Id*. at 51-52.) It also alleges that Defendant's failure to provide evidence as to its "status as Holder in Due Course" violated §§ 392.303, 392.304, & 392.301(8) of the TDCPA. *See* Tex. Fin. Code §§ 392.303(a) ("In debt collection, a debt collector may not use unfair or unconscionable means . . ."), 392.304(a) ("[A] debt collector may not use a fraudulent, deceptive, or misleading representation . . ."), 392.301(a)(8) ("In debt collection, a debt collector may not use threats, coercion, or attempts to coerce that employ . . . threat[s] to take an action prohibited by law.).

"The TDCPA prohibits debt collectors from using various forms of threatening, coercive, harassing or abusive conduct to collect debts from consumers." *Merryman v. JP Morgan Chase & Co.*, No. 3:12–CV–2156-M, 2012 WL 5409735, at *4 (N.D. Tex. Oct. 12, 2012).  A claimant must show: (1) the debt is a consumer debt; (2) the defendant is a debt collector, as defined under the TDCPA; (3) the defendant committed a wrongful act in violation of the TDCPA; (4) the wrongful act was committed against the plaintiff; and (5) the plaintiff was injured as a result of the defendant's wrongful act. Tex. Fin. Code §§ 392.001–392.404. The TDCPA defines a "debt collector," in relevant part, as "a person who directly or indirectly engages in debt collection." *Id*. § 392.001(6). "Debt collection" is defined as "an action, conduct, or practice in collecting, or in soliciting for collection, consumer debts that are due or alleged to be due a creditor." *Id*. § 392.001(5). This can

include "actions taken in foreclosing real property." *See Sanghera v. Wells Fargo Bank, N.A.*, No. 3:10–CV–2414–B, 2012 WL 555155, at *7 (N.D. Tex. Feb. 21, 2012) (citation omitted).

As noted, Defendant provides evidence that shows it is the proper mortgage servicer under the Deed of Trust and directly counters the claim that it cannot foreclose because it is not a "holder in due course." (docs. 30 at 13, 31-1 at 9-12, 15-16, 31-32, 36-40.) It shows that its attempted foreclosure was proper and not based upon fraud, deception, threats, unfair means, or misleading representations actionable under the TDCPA, so it has met its summary judgment burden.

The burden now shifts to Plaintiff to show a genuine issue of fact. Her summary judgment response does not refute Defendant's evidence; it makes new factual assertions to support her TDCPA claim and asserts a new claim under the Texas Deceptive Trade Practices Act (DTPA). (doc. 34 at 2-6.)[5]  It does not address the "holder in due course" argument in her first amended petition; it bases Defendant's alleged liability under the TDCPA on its "refus[al] to provide accurate accountings and . . . [how it] proceeded under the threat of foreclosure while also misrepresenting to Plaintiff that [she] could utilize the loan modification process [which] caused exorbitant collection and attorney fees to be placed on the loan . . . without explanation of the fees." (*Id*. at 4.) She also asserts a new claim under the DTPA based upon the same factual allegations.[6] (*Id*. at 5-6.)

As a general rule, "[a] claim which is not raised in the complaint, but, rather is raised only in response to a motion for summary judgment is not properly before the court." *Cutrera v. Bd. of*

----

[5] Plaintiff initially filed this suit *pro se*, but counsel subsequently entered an appearance on her behalf and filed a response to Defendant's summary judgment motion. (docs. 33, 34.) He did not file or seek leave to file an amended complaint after entering his appearance.

[6] The TDCPA provides: "A violation of this chapter is a deceptive trade practice under [Tex. Bus. Com. Code § 17.50(h)], and is actionable under that subchapter." Tex. Fin. Code § 392.404(a). In turn, § 17.50(h) of the DTPA grants a private right of action to a claimant seeking to recover under the TDCPA. *Garcia v. Jenkins/Babb LLP*, No. 3:11–CV–3171–N–BH, 2013 WL 3789830, at *12 (N.D. Tex. July 22, 2013) (citation omitted); *see also* Tex. Bus. & Com. Code § 17.50(h).

*Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005). This is because a properly pleaded

complaint must give fair notice of what the claim is and the grounds upon which it is based.

*DeFrancheschi v. BAC Home Loans Servicing, L.P.*, 477 F. App'x 200, 204 (5th Cir. 2012). Trial

courts "do not abuse their discretion when they disregard claims or theories of liability not present

in the complaint and raised first in a motion opposing summary judgment." *Id.* Because Plaintiff

did not allege either the new theories of liability on her TDCPA claim or her new claim under the

DTPA in her first amended petition, the Court is not required to consider it.[7] Defendant is entitled

to summary judgment on Plaintiff's claims under the Texas Finance Code.

## C.     **Declaratory Judgment**

Plaintiff also appears to seek declaratory relief under the Texas Declaratory Judgments Act,

codified in §§ 37.001–37.011 of the Texas Civil Practice & Remedies Code. (*See* doc. 1-1 at 54.)

"The Texas act is a procedural, rather than substantive, provision, and would generally not apply to

a removed action such as this one." *Brock v. Fed. Nat'l Mortg. Ass'n*, 2012 WL 620550, at *5 (N.D.

Tex. Feb. 24, 2012) (citing *Utica Lloyd's of Tex. v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998)). In

light of the removal from state court, however, the action may be construed as one brought under

the federal Declaratory Judgment Act (DJA), 28 U.S.C. §§ 2201, 2202. *See Bell v. Bank of America

Home Loan Servicing LP*, 2012 WL 568755, at *8 (S.D. Tex. Feb. 21, 2012) (holding that "[w]hen

a declaratory judgment action is filed in state court and is subsequently removed to federal court,

it is converted to one brought under the federal Declaratory Judgment Act").

The DJA provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court

---

[7] Even if Plaintiff's first amended petition did include her new theories of liability under the TDCPA and the new claim under the DTPA, she still fails to meet her summary burden to show a genuine issue of fact because she points only to conclusory and unsubstantiated assertions on Defendant's mortgage servicing that are insufficient summary judgment evidence. *See Little*, 37 F.3d at 1075.

of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. The federal DJA "does not create a substantive cause of action" and "is merely a vehicle that allows a party to obtain an early adjudication of an actual controversy arising under other substantive law." *Metropcs Wireless, Inc. v. VirginMobile USA, L.P.*, 2009 WL 3075205, at *19 (N.D. Tex. Sept. 25, 2009) (citations and internal quotation marks omitted). The Act is an authorization and not a command, and allows federal courts broad, but not unfettered, discretion to grant or refuse declaratory judgment. *Id.*

Here, Plaintiff seeks a declaration that "Defendant must produce the one and only Original Promissory Note signed by the Plaintiff . . . prior to proceeding with any foreclosure proceedings." (doc. 1-1 at 54.) Because this declaration is based on the "show-me-the-note" theory, her request for declaratory judgment is denied. *See Lombardi v. Bank of America*, No. 3:13-CV-1464-O, 2014 WL 988541, at *22 (N.D. Tex. Mar. 13, 2014) (denying declaratory judgment when the requested declaration was "based on [the plaintiff's] invalid 'split-the-note' and 'show-me-the-note' theories").

## IV. CONTRACT CLAIMS

Defendant next moves for summary judgment on Plaintiff's claims that it breached the Deed of Trust, the loan modification application, and the Note and therefore waived its right to accelerate and foreclose on the Property.[8] (doc. 30 at 13-17.)

Under Texas law, the elements of a breach of contract claim are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the

---

[8] The first amended petition titles this section as "Breach of Contract and Anticipatory Breach of Contract," but its factual allegations and arguments only implicate a breach of contract theory and Defendant's "[l]oss of the right to accelerate [and foreclose]" due to its breach. (doc. 1-1 at 49.) All of Plaintiff's breach of contract claims are addressed together.

defendant; and (4) damages sustained by the Plaintiff as a result of the breach." *Smith Int'l., Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (citation omitted). "A breach occurs when a party fails or refuses to do something he has promised to do." *Dorsett v. Cross*, 106 S.W.3d 213, 217 (Tex. App.–Houston [1st Dist.] 2003, pet. denied).

## A.    Deed of Trust

Defendant argues that it is entitled to summary judgment on Plaintiff's claim that it failed to provide notice under the terms of the Deed of Trust and Tex. Prop. Code § 51.002 because its evidence shows that it provided her with notice of default and right to cure. (doc. 30 at 16-17.)

The Deed of Trust states that the "Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this [Deed of Trust] . . . The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this [Deed of Trust] and sale of the Property." (doc. 31-1 at 26.) Similarly, Texas Property Code § 51.002 requires the mortgage servicer to provide the debtor with notice of default and to give the debtor an opportunity to cure the default within a minimum of 20 days before notice of sale can be given. *See* Tex. Prop. Code § 51.002(d).

Here, Defendant points to a Notice of Default that it sent to Plaintiff on October 6, 2015. (doc. 31-1 at 36-47.) This Notice stated that she was in default for failing to make the required payments, identified the total amount of the past due payments, explained that the past due amount must be submitted on or before November 12, 2015, and stated that failure to make her account current would result in acceleration and potential foreclosure on the Property. (*Id*. at 36-37.) The

Notice also identified her right to reinstate the loan and provided contact information for financial counseling services. (*Id*. at 40.) Defendant next points to the Notice of Acceleration of Maturity on the mortgage that was sent to Plaintiff on February 2, 2016, nearly four months after the Notice of Default had been sent. (*Id*. at 80-83.) This evidence demonstrates that it complied with the notice requirements under both the Deed of Trust and Tex. Prop. Code § 51.002, so it has met its summary judgment burden on this claim.

The burden now shifts to Plaintiff to identify evidence raising a genuine issue of material fact regarding whether Defendant failed to provide her with the requisite notices upon default. Her summary judgment response does not contest the evidence showing that she properly received notice as required under the Deed of Trust and Tex. Prop. Code § 51.002. (doc. 34 at 3-6.) It instead changes the basis for her contract claims and alleges that she "makes her breach of contracts claims pursuant to the Texas Finance Code among other statutes." (*Id*. at 3.) Plaintiff argues that Defendant breached the relevant contracts because its "conduct in this matter constitutes unreasonable collection practices" under the TDCPA and the DTPA. (*Id*. at 3.) Though her first amended petition asserts separate underlying facts for her contract claims and her TDCPA claims, she now combines all of these claims in her summary judgment response and bases them on facts that were not previously identified. (*See* docs. 1-1 at 48-52, 34 at 3-6.) Because Plaintiff did not allege this new theory of liability for breach of contract in her first amended petition, it is not properly before the Court and will not be considered.[9] *See DeFrancheschi*, 477 F. App'x at 204 (Trial courts "do not

---

[9] Even if her new "breach of contract claims pursuant to the Texas Finance Code" were considered, Plaintiff still fails to meet her summary judgment burden because she does not identify a specific provision in any contract that was allegedly breached, and instead makes only conclusory and unsubstantiated statements based upon Defendant's alleged violations of the TDCPA. *See Innova Hospital San Antonio, L.P. v. Blue Cross and Blue Shield of Georgia, Inc*., 995 F. Supp. 2d 587, 602 (N.D. Tex. 2014) (explaining that "a plaintiff must identify a specific provision of the contract that was allegedly breached" to avoid dismissal); *see Motten v. Chase Home Finance*, 831

abuse their discretion when they disregard claims or theories of liability not present in the complaint and raised first in a motion opposing summary judgment."); *see also Cutrera*, 429 F.3d at 113 ("A claim which is not raised in the complaint, but, rather is raised only in response to a motion for summary judgment is not properly before the court.") Plaintiff has failed to meet her summary judgment burden on this claim.

**B.    Loan Modification Application**

Defendant argues that it is entitled to summary judgment on Plaintiff's claim for breach of the loan modification application because she does not point to any evidence that a valid and written loan modification contract existed as required under the Statute of Frauds. (doc. 30 at 14-15.)

Plaintiff's first amended petition asserts that "Defendant offered and Plaintiff accepted a loan modification review. Plaintiff spoke to Defendant . . . [and] told Plaintiff that she qualified for a loan modification but that she had to send in financial information . . . [where] Plaintiff complied and Defendant acknowledged receipt of application." (doc. 1-1 at 48.) She argues that "Defendant's promises constituted a unilateral contract which was breached by Defendant when they posted Plaintiff's Property for foreclosure sale." (*Id*.)

The existence of a valid contract is an "essential element[] in a breach of contract claim" under Texas law. *Bridgmon v. Array Sys. Corp*., 325 F.3d 572, 577 (5th Cir. 2003) (citation omitted). To show the existence of a contract, a plaintiff must establish, *inter alia*, an offer, "an acceptance in strict compliance with the terms of the offer," and a meeting of the minds. *Southern v. Goetting*, 353 S.W.3d 295, 299 (Tex. App. –El Paso 2011, reh'g denied). Under Texas law, a

---

F. Supp. 2d 988, 1003 (S.D. Tex. 2011) (dismissing a breach of contract claim on a foreclosure action because plaintiffs "fail[ed] to provide the loan documents that were breached and to indicate which provisions were breached").

"loan agreement in which the amount involved in the loan agreement exceeds $50,000 in value is not enforceable unless the agreement is in writing and signed by the party to be bound or by that party's authorized representative." Tex. Bus. & Com. Code § 26.02(b). The term "loan agreement" includes any agreement or promise where a financial institution "loans or delays repayment of or agrees to loan or delay repayment of money, goods, or another thing of value or to otherwise extend credit or make a financial accommodation." *Id.* at § 26.02(a)(2); *see Gordon v. JPMorgan Chase Bank, N.A.*, 505 F. App'x 361 (5th Cir. 2013). This means that an agreement for a loan modification under a mortgage agreement exceeding $50,000.00 is subject to the Texas Statute of Frauds and must be in signed writing to be enforceable. *See* Tex. Bus. & Com. Code § 26.02(a), (b); *see Milton v. U.S. Bank Nat. Ass'n*, 508 F. App'x 326, 328 (5th Cir. 2013) (collecting cases).

Defendant argues that there is no evidence of a signed writing memorializing the loan modification and points to evidence of the Notice that it sent to Plaintiff on February 18, 2016, which stated that her request for a loan modification could not be evaluated unless she submitted a fully completed loan modification application and supporting documentation by February 23, 2016. (doc. 31-1 at 88-111.) It also points to evidence of the Notice that it sent her on February 29, 2016, which stated that she was "not eligible for a loan modification at this time" because it was "unable to evaluate [her] application [since it] was not completed by the 7th business day prior to the foreclosure sale and all due dates for the items requested have expired." (*Id*. at 116-19.) Defendant has met its burden to show a complete failure of proof on the existence of a contract in signed writing on Plaintiff's loan modification.

The burden now shifts to Plaintiff to identify evidence in the record raising a genuine issue of material fact as to the existence of a valid contract on her loan modification. She does not point

to any evidence in her summary judgment response and instead asserts that her "breach of contract . . . is a question of the adequacy of servicing the loan, and is not merely conditioned upon the arguments set forth by Defendant with regard to the Statute of Frauds." (doc. 34 at 4.) She does not provide any additional argument or authority as to why the Statute of Frauds does not apply to her alleged "unilateral contract" with Defendant for loan modification. Because she fails to point to evidence on the existence of a valid and written contract for loan modification, she has failed to meet her summary judgment burden to show evidence of a necessary element of her claim. *See Gordon*, 505 F. App'x at 361 (holding that loan modification efforts, without either a written contract or a promise to sign a written contract, are insufficient to meet the requirements of the Statute of Frauds and unenforceable).

## C.   Note

Defendant argues that it is entitled to summary judgment on Plaintiff's claim for breach of the "implied duty of good faith and fair dealing" because that duty was not a part of the Note. (doc. 30 at 15-16.)

Plaintiff's first amended petition alleges that Defendant owed her a duty of good faith and fair dealing under the Note because this duty "is included in the performance of every contract." (doc. 1-1 at 48.) It claims that Defendant breached this duty when it "deliberately accelerated the Note" after it "purposely delayed and misled Plaintiff [while servicing the mortgage] to a point of foreclosure." (*Id.* at 48-49.) Plaintiff further alleges in her summary judgment response that Defendant breached the duty of good faith and fair dealing by its "failure to provide accurate statements due to discrepancies in the insurance, failure to disclose lender paid mortgage insurance, placing the property into foreclosure while purportedly reviewing a loan modification, manipulating

Plaintiff into filing for a short sale and providing a September 23, 2017 deadline to provide documents yet filing for summary judgment, [and] inaccurate escrow accounting." (doc. 34 at 4-5.)

Under Texas law, "there is no general duty of good faith and fair dealing in ordinary, arms-length commercial transactions in Texas." *Marketic v. U.S. Bank National Association*, 436 F. Supp. 2d 842, 855 (N.D. Tex. 2006). Such a duty can arise when it is "created by express language in a contract," however, or when "a special relationship of trust and confidence exists between parties to [a] contract." *Lovell v. W. Nat'l Life Ins. Co.*, 754 S.W.2d 298, 302 (Tex. App.–Amarillo 1988, writ denied). Though there are a limited number of circumstances where a plaintiff has "assert[ed] a special relationship . . . that [justifies imposing a] duty of good faith and fair dealing," Texas courts have consistently held that the mortgagor-mortgagee relationship is not a special relationship that generally gives rise to a fiduciary duty. *Fed. Deposit Ins. Corp. v. Coleman*, 795 S.W.2d 706, 709-10 (Tex. 1990) ("The relationship of mortgagor and mortgagee ordinarily does not involve a duty of good faith.") (citing *English v. Fischer*, 660 S.W.2d 621, 622 (Tex. 1983)). The same is also true of a loan servicer and mortgagee. *See Williams v. Fed. Nat. Mortg. Ass'n*, No. 2:11-CV-157-J, 2012 WL 443986 at *3 (N.D. Tex. Feb. 13, 2012) (citation omitted). This is because "'[g]enerally, the relationship between a borrower and a lender [or loan servicer] is an arm's length business relationship in which both parties are looking out for their own interests.'" *Id.* (quoting *McKinney Ltd. v. Credit Suisse First Boston Mortg. Capital*, 192 S.W.3d 20, 36 (Tex. Civ. App.–Houston [14th Dist.] 2005, pet. denied)).

Here, Defendant argues that there is no evidence in the record that it owed Plaintiff a duty of good faith and fair dealing because the loan was an arms-length business transaction that did not include express language creating this duty. (doc. 30 at 15.) It points to a lack of evidence showing

the existence of a "special relationship" during its servicing of the mortgage. (*Id*. at 16.) Where, as here, the non-movant bears the burden of proof, the movant's burden may be discharged by pointing out a complete lack of evidence to support the non-movant's case. *Celotex*, 477 U.S. at 325. Defendant has therefore met its summary judgment burden by showing a complete lack of evidence establishing that it owed Plaintiff the duty of good faith and fair dealing.

The burden now shifts to Plaintiff to identify evidence in the record raising a genuine issue of material fact as to the existence of Defendant's duty of good faith and fair dealing to her. Plaintiff submits her own affidavit describing her "special relationship" with Defendant. (doc. 34 at 88-90.) It states that she "worked with [Defendant] after initially entering into an arrangement with GMAC Finance and thereafter with [it] to acquire the Property years ago" and explains how she "developed a trust for [Defendant] as a lender in that [they] have a long-standing relationship, and [she has] placed [her] trust and confidence in [Defendant] as a bank, with [her] personal information." (*Id*. at 89.) The affidavit states that Defendant "knows, or has reason to know that [she] placed [her] trust and confidence in [Defendant] relying on them to counsel and inform [her] regarding the best way to ensure that [she] can continue to enjoy the Property." (*Id*.) Plaintiff argues that it shows the existence of her "special relationship" with Defendant because they had multiple contracts, she "placed her trust and confidence" in Defendant, and it has an "unequal bargaining position" in that it can purchase lender-paid insurance and deny her loan modifications. (*Id*. at 7-9.)

Even when viewed in the most favorable light, Plaintiff's evidence contains only conclusory and vague assertions about her "trust and confidence" in Defendant with little factual support. *See Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (requiring a non-moving party to "go beyond the pleadings and designate specific facts showing that there is a genuine issue

of material fact for trial."). Plaintiff's assertions that her reliance on Defendant was justified is also unsubstantiated in light of the fact that she simultaneously states that she experienced many problems and errors with Defendant's servicing of the loan "for years." (doc. 34 at 88-89.) Though Plaintiff's evidence does show Defendant in a more dominant bargaining position, this is typical of "the relationships that develop daily and ordinarily in myriad similar banking situations," and Plaintiff's evidence instead shows that she "was simply an established and valued customer."[10] *Nationsbank v. Perry Bros. Inc.*, 68 F.3d 466 (5th Cir. 1995) (unpublished) (finding no "special relationship" between a borrower and lender even though the borrower "depended upon [the lender] for its critical financing requirements, and often shared its business-related confidence with [the lender]"); *see Sullivan v. Bank of America, N.A.*, No. 3:14-CV-3186-G, 2014 WL 6977093, at *5 (N.D. Tex. Dec. 10, 2014) (finding no special relationship between a mortgagor and mortgagee even though there was an "imbalance in bargaining power" because the plaintiff "fail[ed] to substantiate her conclusory statement[s]"). Plaintiff has failed to meet her summary judgment burden, and Defendant is entitled to summary judgment on her contract claims.

## V. FDCPA

Defendant next moves for summary judgment on Plaintiff's claim under § 809 of the FDCPA for its alleged failure to provide notice on a debt because the evidence shows that it fully complied with this requirement. (doc. 30 at 17-19.)

---

[10] Plaintiff's summary judgment response relies upon and highlights the similarities in this case to a decision finding a "special relationship" between a mortgagor and mortgagee. (doc. 34 at 7-8) (citing *F.D.I.C. v. Perry Bros.*, 854 F. Supp. 1248, 1259 (E.D. Tex. 1994)). That case was expressly reversed by the Fifth Circuit on appeal, however, because "characterizing [that] particular relationship between [the mortgagor and mortgagee] as "special," such as to impose the duty of good faith and fair dealing, would deprive this narrow doctrine of Texas law of any meaningful limitation and thus would invite precisely the abuse that prompted the Texas Supreme Court's earlier-quoted expression of concern." *Nationsbank*, 68 F.3d at 466.

In order to state a FDCPA claim, a plaintiff must allege facts sufficient to show that "(1) [the plaintiff has] been the object of collection activity arising from a consumer debt; (2) the defendant is a debt collector defined by the FDCPA; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Hunsinger v. SKO Brenner Am., Inc.*, No. 3:13-CV-988-D, 2013 WL 3949023, at *2 (N.D. Tex. Aug. 1, 2013). The FDCPA defines a debt collector as "any person . . . in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

Under § 809 of the FDCPA, a debt collector must send a written notice to the debtor containing the following information:

> (1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor. 15 U.S.C. § 1692g.

To show compliance with the FDCPA, Defendant points to a Notice of Default that it mailed to Plaintiff on October 6, 2015. (doc. 31-1 at 36-47.) It stated that Plaintiff was in default for failing to make the required payments, included the total amount of the past due payments, identified the creditor under the mortgage, and stated that failure to make her account current would result in acceleration and potential foreclosure on the Property. (*Id*. at 36-37.) It also stated that unless Plaintiff disputed the validity of the debt within thirty days after receipt of the notice, it would be

assumed to be valid by the debt collector, and that she would obtain verification of the debt and a copy of the verification if she notified Defendant in writing within the thirty-day period. (*Id*. at 36.) Defendant next points to the Notice it sent her on November 28, 2015, which again included all the above information, as well as the updated amount of the unpaid debt under the mortgage documents. (*Id*. at 50-51.) This evidence shows that Defendant complied with § 809 of the FDCPA by providing Plaintiff with proper notice of the debt. It has met its summary judgment burden.

The burden now shifts to Plaintiff to show a genuine issue of material fact regarding whether Defendant failed to provide proper notice under the FDCPA. Her summary judgment response does not contest Defendant's evidence that she received the two notices with the requisite information. (doc. 34 at 3.)  It also does not address her FDCPA claim or attempt to point to any evidence showing a fact issue on this claim, so she fails to meet her summary judgment burden. Defendant is entitled to summary judgment on Plaintiff's FDCPA claim.

## VI.  DODD-FRANK ACT

Defendant seeks summary judgment on Plaintiff's claims under the Dodd-Frank Act[11] for "dual tracking," failing to provide a decision on her loan modification application, and failing to cancel a "force-placed hazard insurance policy" on the Property.  (doc. 30 at 20-23.)

## A.    Loan Modification Application

Defendant first argues that it is entitled to summary judgment on Plaintiff's claims of "dual tracking" and its alleged failure to issue a decision on her loan modification application because she failed to submit a completed loan modification application within the required statutory time frame. (doc. 30 at 19-20.)

---

[11] Pub. L. No. 111–203, 124 Stat. 1376 (2010).

Dual tracking is the term for situations in which a lender actively pursues foreclosure while simultaneously considering the borrower for loss mitigation options. *See* 12 C.F.R. § 1024.41. Section 1024.41(g) prohibits dual tracking, and § 1024.41(a) expressly provides for a private right of action if the lender violates the provision. *Id.*; *see also Wentzell v. JPMorgan Chase Bank, Nat. Ass'n*, 627 F. App'x 314, 318 n.4 (5th Cir. 2015). Section 1024.41(g) applies only when "a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale." 12 C.F.R. § 1024.41(c).

Here, Defendant points to the Notice of Substitute Trustee Sale it sent to Plaintiff that identified the date of foreclosure sale as March 1, 2016. (doc. 31-1 at 79-83.) It also points to the Notice that it sent her on February 18, 2016, which explained that her loan modification application was incomplete and missing required documents, and to a Notice that it sent her on February 29, 2016, which stated that her application for loan modification was denied because she had failed to submit a completed application by the due date. (*Id.* at 88-117.) Its summary judgment evidence shows that it formally denied her loan modification application, and that the "dual-tracking" provisions did not apply because Plaintiff failed to submit a complete loss mitigation application more than 37 days before a foreclosure sale. Defendant has met its summary judgment burden.

The burden now shifts to Plaintiff to show a genuine issue of material fact regarding whether she submitted a complete application to Defendant within the statutory time frame. She does not even allege that she submitted a complete application to Defendant, only that it "refused to allow [her] to avail herself of the loan modification process." (doc. 34 at 6.) She has pointed to no evidence that Defendant received a complete loss mitigation application more than 37 days before any foreclosure sale. *See Gresham v. Wells Fargo Bank, N.A.*, 642 F. App'x 355, 358-59 (5th Cir. 2016)

(affirming dismissal of a "dual tracking" claim where the plaintiff failed to allege any factual content that he submitted a complete loss mitigation application more than 37 days before the foreclosure sale). Plaintiff has failed to meet her summary judgment burden on this claim.

## B.    Force-Placed Insurance

Defendant also argues that it is entitled to summary judgment on Plaintiff's claim that it improperly obtained a force-placed hazard insurance policy on the Property because there is no evidence that she provided proof of her own hazard insurance policy.[12]  (doc. 30 at 21-23.)

The term "force-placed insurance" is defined as "hazard insurance coverage obtained by a servicer of a federally related mortgage when the borrower has failed to maintain or renew hazard insurance on such property as required of the borrower under the terms of the mortgage." 12 U.S.C. § 2605(k)(2). A "servicer of a federally related mortgage shall not . . . obtain force-placed hazard insurance unless there is a reasonable basis to believe the borrower has failed to comply with the loan contract's requirements to maintain property insurance" and "[a]ll charges, apart from charges subject to State regulation as the business of insurance, related to force-placed insurance imposed on the borrower by or through the servicer shall be bona fide and reasonable." *Id.* at § 2605(k)(1)-(m). If, after obtaining force-placed hazard insurance, the loan servicer receives "confirmation of a borrower's existing insurance coverage," then the servicer must terminate the force-placed insurance policy within 15 days and "refund to the consumer all force-placed insurance premiums paid by the borrower during any period during which the borrower's insurance coverage and the force-placed insurance coverage were each in effect." 12 U.S.C. § 2605(l)(3).

---

[12] The relevant statutes on the requirements for servicing "force-placed" insurance policies are found in the Real Estate Settlement Procedures Act (RESPA). *See* 12 U.S.C. § 2605.

Here, Defendant points to Plaintiff's first amended petition and the record to show a lack of factual assertions and evidence that she provided it notice of an existing hazard insurance policy, or that it failed to return any insurance premiums after receiving notice. (doc. 30 at 22-23.) Because Defendant has shown a complete lack of evidence as to an essential element of Plaintiff's claim for failure to remove lender-placed hazard insurance, it has met its summary judgment burden.

The burden now shifts to Plaintiff to show evidence of a genuine issue of fact as to whether she provided sufficient notice to Defendant under 12 U.S.C. § 2605(l). Her summary judgment response claims that she "always maintained insurance" on the Property and includes a copy of the insurance policy for the 2016-2017 term. (doc. 34 at 4-5, 18-87.) She does not respond to or contest Defendant's assertion that she never provided notice of an existing personal hazard insurance policy on the Property. She also fails to identify the specific period during which her insurance coverage and the force-placed insurance coverage were both in effect. She therefore fails to meet her summary judgment burden on this claim. *See Vela v. City of Houston*, 276 F.3d 659, 666 (5th Cir. 2001) ("[I]f the non-movant fails to present sufficient facts to support an essential element of his claim, summary judgment is appropriate"). Defendant is therefore entitled to summary judgment on Plaintiff's claims under the Dodd-Frank Act.[13]

## VII. CONCLUSION

Defendant's motion for summary judgment is **GRANTED**, and all of Plaintiff's claims are **DISMISSED with prejudice**.

---

[13] Because none of her claims can withstand summary judgment, Plaintiff's request for injunctive relief is similarly denied. *See Jones v. Bank of New York Mellon*, No. H–13–2414, 2015 WL 300495, at *12 (N.D. Tex. Jan. 22, 2015) (finding claim for injunctive relief should be denied because the plaintiff's underlying claims were dismissed); *see also Nelson v. Wells Fargo Home Mortg.*, No. 3:10–CV–1771, 2012 WL 6928579, at *6 (N.D. Tex. Nov. 5, 2012), *adopted by* 2013 WL 271537 (N.D. Tex. Jan. 22, 2013) (finding request for injunctive relief fails as a matter of law where the plaintiff failed to demonstrate any well-founded causes of action against the defendant).

**SO ORDERED** on this 17th day of October 2017.


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE